178.   Seligman testified before the Los Angeles County Employee Relations Commission in 2007 in hearings to determine whether ADDA should be certified as an employee organization qualified to represent deputy district attorneys in negotiations for a collective bargaining agreement with the County.

179.   Seligman offered key testimony that convinced the Commission to certify ADDA an employee organization.  ADDA trumpeted Seligman's role in convincing ERCOM on March 24, 2008 to recognize ADDA as a County employee organization.

180.   Approximately one month after ERCOM certified ADDA, Richard Doyle, a high level official in the Cooley Administration, called Seligman and told him he was being transferred out of the Psychiatric Section.  Doyle said he did not know the reason for Seligman's transfer, despite the fact that Directors normally conduct all transfers in the DA's Office.  Doyle told Seligman that he had done such a good job that Seligman could choose his next assignment.

181.   Seligman called Doyle early the following week and asked for an assignment in which he would continue to have supervisory authority, either as a Deputy-In-Charge or as Assistant Head Deputy.  Doyle said no such openings existed.

182.   Seligman then requested an assignment in the Major Crimes Division.  Doyle said there was no opening there.

183.   Seligman then requested an assignment in the Organized Crimes Division.  Doyle told him there was no opening there.

**FIRST AMENDED COMPLAINT**

184.    Finally, Seligman requested to be sent back to the Training Division. Doyle granted this request, but refused to give Seligman a supervisory position, despite the fact that Seligman's supervisors had rated him "Outstanding" in his previous, supervisory assignment in the Psychiatric Section.

*Seligman's 2009 Punitive Transfer*

185.    In 2009 Seligman joined ADDA's Contract Negotiating Team.

186.    In a bargaining session on March 17, 2009, Seligman questioned Defendants' punitive transfers of prosecutors.  In response, a member of Cooley's bargaining team told Seligman that she found his comments to be "off-putting." Seligman told her that he apologized if she found his comments to be offensive.

187.    Two days later, Seligman's supervisor in the Training Division informed him that Defendants were transferring Seligman to the DA's branch office in Long Beach.  Seligman's supervisor was upset by the transfer and did not want to lose Seligman as a trainer for new deputy prosecutors, given that he had performed key components of every training class for the past thirteen years.  In fact, Seligman was informed that he was not to have any role whatsoever in training any of the new prosecutors.

188.    Defendants' punitive transfers of Seligman and Dver[13] from the Training Division have ensured that no ADDA Board members are available to train newly

_____

[13] See, *supra*, ¶ 37.

52

**FIRST AMENDED COMPLAINT**

1    hired prosecutors and that new prosecutors, in turn, will not have any pro-union
2    mentors during the early years of their careers in the DA's office.
3
4        189.   Seligman promptly contacted Michael Tranbarger, the Head Deputy of
5    the Long Beach Branch Office and the person who would soon be Seligman's
6    superior.  Tranbarger informed Seligman that Long Beach did not need Seligman and
7    did not have any office space for him.  He then said that he would find somewhere to
8    put a desk for Seligman, even if it was in a hallway.
9
10       190.   Seligman's assignments in Long Beach do not include any training of
11   deputy prosecutors or special expertise in psychiatric issues.
12
13       191.   Defendants subjected Seligman to these punitive transfers in accordance
14   with their Union Discrimination Policy, and in retaliation for his exercise of his First
15   Amendment Rights of Freedom of Speech and Freedom of Association.
16
17       192.   Four months after Defendants transferred him to Long Beach, Seligman
18   received a PE rating of "Meets Expectations" from Tranbarger.  This rating was two
19   tiers below the "Outstanding" ratings Seligman had previously received throughout
20   his career.  The PE did not describe any of Seligman's work during his prior eight
21   months at the Training Division, despite the fact that PEs are supposed to be based
22   upon a prosecutor's performance for an entire 12-month period.
23
24       193.   When Seligman asked Tranbarger about the PE, Tranbarger explained that
25   a "Meets Expectations" rating was the highest rating he was allowed to give to
26   Seligman and, if he had given Seligman a higher rating in his PE, Defendants would
27   have "kicked it back" to Tranbarger and made him revise it.
28

**FIRST AMENDED COMPLAINT**

1

2 *DDA James Bozajian's Background*

3

4      194.   James Bozajian is a Grade III deputy district attorney. He joined the

5 DA's office in 1990 and has been on ADDA's Board of Directors since 1993. He

6 served as ADDA's President in 1996 and 1997.

7

8      195.   Bozajian has also served as a member of the Calabasas City Council for

9 13 years.

10

11      196.   As with his fellow ADDA colleagues, Bozajian has routinely received

12 "Outstanding" ratings on his PEs. His 2007 PE contained the following remarks:

13

14          Mr. Bozajian did an excellent job in the arraignment court in San

15          Fernando. He took the job very seriously and represented our office

16          well in court. He overhauled the filing system for [drug court] and

17          bench warrant files so that the files are more readily accessible. He

18          read files carefully in preparation for arraignments, making sure that the

19          charges filed and the bail requested were appropriate. Mr. Bozajian

20          would bring to my attention issues that he spotted which may have

21          eluded the filing deputies. Mr. Bozajian also displayed initiative in

22          taking upon himself the preparation on a monthly basis of statistics on

23          [drug court] and [deferred entry of judgment] cases.

24          Mr. Bozajian has been very dependable in his attendance and

25          observance of work hours. Despite the fact that the arraignment court

26          was not an easy assignment as it often ran late into the evening, Mr.

27

28

54

**FIRST AMENDED COMPLAINT**

Bozajian approached the assignment without any complaints. He required minimal instruction, yet sought guidance when appropriate.

Mr. Bozajian got along well with his colleagues, office staff and courtroom staff. Mr. Bozajian did an outstanding job in San Fernando.

197.  As a result of Bozajian's participation and support of ADDA, Defendants have transferred him eight times in the past eight years.

198.  These transfers included three years in the Juvenile Courts in Sylmar and Antelope Valley between 2001 and 2004, an unprecedented punishment for a prosecutor with over a decade of experience, as Bozajian had at that time.

199.  After Bozajian and other ADDA Board members began seeking certification of ADDA as an employee organization, Defendants used DA Investigators to harass him.

200.  In January 2006, Defendants instructed two DA Investigators to hand deliver a letter to Bozajian. This letter threatened disciplinary action if he sent political material from his home computer to other deputy district attorneys.

201.  When the DA Investigators served this letter upon Bozajian, they were apologetic and expressed their regrets to him.

202.  This harassment came in the midst of one of the most hotly contested elections in ADDA's history. Defendants had tacitly supported a rival slate of

**FIRST AMENDED COMPLAINT**

1 candidates who opposed unionization. Defendants used DA Investigators to disrupt

2 the re-election efforts of ADDA Board Members such as Bozajian.

3

4     203. Steve Ipsen, ADDA's President, was also personally served with a letter

5 by DA Investigators threatening discipline against him.

6

7     204. Both before and after January 2006, Defendants routinely permitted non-

8 ADDA members to use office e-mail addresses to send and receive political material.

9 They have also permitted ADDA members deemed to be pro-Cooley to use office e-

10 mail addresses for the same purpose.

11

12     205. On or about May 26, 2008, Bozajian mailed a letter to all of his fellow

13 deputies in the DA's Office. The letter was entitled "10 Reasons Why Steve Cooley

14 Does Not Deserve Another Term in Office." Bozajian sent the letter to each deputy's

15 office via U.S. Mail and bore all of the related mailing and copying expenses.

16

17     206. Defendants Cooley and Spillane illegally ordered the impoundment and

18 destruction of this mail.

19

20     207. On October 19, 2009, Defendants suspended Bozajian without pay for 30

21 days. Plaintiffs are informed, believe, and thereon allege that Bozajian's suspension

22 resulted from Defendants' anti-union animus.

23

24                  **CLASS ACTION ALLEGATIONS**

25

26     208. ADDA brings its Class Action claims on behalf of itself and all other

27 persons similarly situated pursuant to F.R.Civ.P. Rules 23(a), (b)(2) and (b)(3).

28

56

**FIRST AMENDED COMPLAINT**

209.    Pursuant to Cent. Dist. Local Rule 23-2.2, ADDA alleges the following:

(a)     The Class consists of Los Angeles County Deputy District Attorneys in Grades I through IV from December 2007 through February 2008 who returned union cards during that time demonstrating their desire to become unionized employees.

(b)     The Class consists of approximately 650 prosecutors, thus the members of the Class are so numerous that joinder of all Class members is impracticable.

(c)     ADDA will fairly and adequately protect the interests of the members of the Class who, by definition, are favorably disposed toward the union.  ADDA has retained competent and experienced counsel for this matter. ADDA has no interests that are adverse or antagonistic to those of the other members of the Class.

(d)     Questions of fact common to the Class are present in that the invasion of the Class members' privacy rights arose from the same acts: (1) Defendant Burke's disclosure to Cooley and his management officials of a highly confidential list containing the names of prosecutors who returned union cards and (2) Defendants' use of that list to threaten adverse employment actions against those that voted for unionization as well as slandering all prosecutors who returned union cards.  Questions of law common to the Class are also present because all of the Class members' rights arise from the same

57

**FIRST AMENDED COMPLAINT**

1    provisions of the U.S. Constitution and the same procedural rules will apply to

2    all of the Class members.

3

4        (e)    ADDA's claims are typical of those of the Class members.

5    Defendants' disclosure and exploitation of highly sensitive information

6    identifying prosecutors who returned union cards has resulted in union activities

7    by members being chilled, thereby damaging both union members and the

8    union as an entity.

9

10       (f)    The claims arising from Defendants' violation of the Class

11   members' privacy rights are suitable for certification under F.R.Civ.P. Rule

12   23(b)(3) because common questions of law and fact predominate and a class

13   action is superior to other available methods for the fair and efficient

14   adjudication of this controversy, for several reasons:

15

16       1) The members of the Class have little interest in individually

17       controlling the prosecution of separate actions.  Virtually all of

18       them are career prosecutors currently employed by Defendants,

19       and desire to remain so employed for the duration of their careers

20       and do not desire to further antagonize Defendants by bringing

21       separate suits;

22

23       2) There is no pending litigation concerning the violations suffered

24       by members of the Class;

25

26

27

28

58

**FIRST AMENDED COMPLAINT**

1     3) Concentrating the litigation of the Class members' claims is

2     desirable because all of them will be subject to the same

3     procedural rules and substantive law;

4

5     4) The Class will be manageable because it is precisely defined,

6     easily ascertained, and its virtually all of its members are currently

7     employed by the District Attorney's Office.  No hostility or

8     antagonism exists among Class members.

9

10   (g) ADDA proposes to notify members of the proposed Class by first

11 class mail and/or by notices that can be easily placed in paycheck envelopes or

12 included with other notices that Defendants regularly distribute to prosecutors.

13 ADDA also notes that notice would be both feasible and economical through

14 the use of Defendants' internal email system, which is connected to the

15 computer terminals assigned to each of the Class members.

16

17   210. The claims arising from Defendants' violation of the Class members'

18 privacy rights are also suitable for certification under F.R.Civ.P. Rule 23(b)(2)

19 because Defendants have acted and/or refused to act on grounds generally applicable

20 to the Class, thereby making appropriate final declaratory and injunctive relief with

21 respect to the Class as a whole.

22

23

24        **FIRST CAUSE OF ACTION**

25  **(Violation of U.S. Constitution, Amendment I – Freedom of Association)**

26  **(On Behalf of Plaintiffs ADDA and the Unnamed Deputy District Attorney**

27        **Against All Defendants)**

28

211. Plaintiffs hereby incorporate by reference all of the foregoing allegations as if set forth fully herein.

212. At all times pertinent hereto, it was clearly established federal law that Plaintiffs ADDA and the Unnamed Deputy District Attorney had a right to freedom of association guaranteed by the First Amendment to the Constitution of the United States. This right encompasses the right of all workers, both in public and private sectors, to form, and participate in, labor unions.

213. At all times pertinent hereto, it was clearly established federal law that Plaintiffs ADDA and the Unnamed Deputy District Attorney had a right to be free from actions taken by a governmental employer that "chill the exercise of First Amendment Freedoms."

214. At all times pertinent hereto, it was clearly established federal law that the First Amendment right to freedom of association is violated by threats of retaliation against persons desiring to exercise that right as well as actual retaliation occurring after the fact.

215. At all times pertinent hereto, each Defendant knew, or should have known, of the aforementioned constitutional rights clearly established under federal law.

216. ADDA desires to have its members be able to gather together and promote the activities of ADDA including, but not limited to, organizing deputy district attorneys, representing deputy district attorneys in negotiations with the County regarding collective bargaining agreements, and advancing legislative

60

**FIRST AMENDED COMPLAINT**

1  proposals in the California Legislature and the County Board of Supervisors that are

2  beneficial to ADDA members, the public, and the criminal justice system.

3

4      217.   Defendants' Union Discrimination Policy has hindered ADDA and its

5  members from organizing and recruiting other deputy district attorneys to become

6  members of ADDA and promote the activities of ADDA.

7

8      218.   Defendants' Union Discrimination Policy has also violated the rights of

9  the Unnamed DDA and other deputy district attorneys who desire to become active

10  members of ADDA but do not want to risk exposure to Defendants' Union

11  Discrimination Policy.

12

13      219.   Accordingly, Defendants' Union Discrimination Policy violates the right

14  of free association guaranteed by the First Amendment to the United States

15  Constitution, made applicable to state and local governments through the Due Process

16  Clause of the Fourteenth Amendment and actionable pursuant to 42 U.S.C. §1983.

17

18      220.   Plaintiffs ADDA and the Unnamed Deputy District Attorney suffered

19  injuries, damages and losses as a result of Defendants' conduct as stated herein.

20

21

22  **SECOND CAUSE OF ACTION**

23  **(Violation of U.S. Constitution, Amendment I – Freedom of Speech)**

24  **(On Behalf of All Plaintiffs ADDA and The Unnamed Deputy District Attorney**

25  **Against All Defendants)**

26

27      221.   Plaintiffs hereby incorporate by reference all of the foregoing allegations

28  as though set forth fully herein.

61

**FIRST AMENDED COMPLAINT**

222.   At all times pertinent hereto, it was clearly established federal law that Plaintiffs ADDA and the Unnamed Deputy District Attorney had a right to freedom of speech guaranteed by the First Amendment to the Constitution of the United States. This right encompasses the right of all workers, both in public and private sectors, to discuss, make statements regarding, and express opinions regarding matters of public policy, including "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government."

223.   At all times pertinent hereto, it was clearly established federal law that Plaintiffs ADDA and the Unnamed Deputy District Attorney had a right to be free from government retaliation taken against them for speech that touches matters of public concern.  This right to be free of retaliation includes the right to be free from adverse employment action substantially motivated by protected speech.

224.   At all times pertinent hereto, each Defendant knew, or should have known, of the aforementioned constitutional rights clearly established under federal law.

225.   ADDA and its members have a constitutional right to free speech in relation to the promotion of the activities of ADDA including, but not limited to, public policy matters relating to organizing deputy district attorneys, representing deputy district attorneys in negotiations with the County regarding collective bargaining agreements, and advancing legislative proposals in the California Legislature and the County Board of Supervisors that are beneficial to ADDA members and the criminal justice system.

**FIRST AMENDED COMPLAINT**

1

2    226.   Defendants' Union Discrimination Policy has hindered ADDA and its

3  members from speaking out about these matters.

4

5    227.   Defendants' Union Discrimination Policy has also violated the free

6  speech rights of the Unnamed DDA and other district attorneys who desire to become

7  active members of ADDA and speak out about public policy matters concerning

8  ADDA but do not want to risk exposure to Defendants' Union Discrimination Policy.

9

10    228.   Accordingly, Defendants' Union Discrimination Policy violates the right

11  of free speech guaranteed by the First Amendment to the United States Constitution,

12  made applicable to state and local governments through the Due Process Clause of the

13  Fourteenth Amendment and actionable pursuant to 42 U.S.C. §1983.

14

15    229.   Plaintiffs ADDA and the Unnamed Deputy District Attorney suffered

16  injuries, damages and losses as a result of Defendants' conduct as stated herein.

17

18

19                  **THIRD CAUSE OF ACTION**

20    **(Violation of U.S. Constitution, Amendment I – Freedom of Association)**

21  **(On Behalf of Plaintiffs Ipsen, Debbaudt and Seligman Against All Defendants)**

22

23    230.   Plaintiffs hereby incorporate by reference all of the foregoing allegations

24  set forth in paragraphs 1 through 6, 8 through 207, 211 through 229 as if set forth fully

25  herein.

26

27    231.   At all times pertinent hereto, it was clearly established federal law that

28

63

**FIRST AMENDED COMPLAINT**

Plaintiffs Ipsen, Debbaudt and Seligman had a right to freedom of association guaranteed by the First Amendment to the Constitution of the United States.  This right encompasses the right of all workers, both in public and private sectors, to form, and participate in, labor unions.

232.   At all times pertinent hereto, it was clearly established federal law that Plaintiffs Ipsen, Debbaudt and Seligman had a right to be free from actions taken by a governmental employer that "chill the exercise of First Amendment Freedoms.

233.   At all times pertinent hereto, it was clearly established federal law that the First Amendment right to freedom of association is violated by threats of retaliation against persons desiring to exercise that right as well as actual retaliation occurring after the fact.

234.   At all times pertinent hereto, each Defendant knew, or should have known, of the aforementioned constitutional rights clearly established under federal law.

235.   Plaintiffs Ipsen, Debbaudt and Seligman, who are members of ADDA, and sit on its Board of Directors and negotiating committee, and have done so for several years, desire to be able to gather together, and with other members of ADDA and promote the activities of ADDA including, but not limited to, organizing deputy district attorneys, representing deputy district attorneys in negotiations with the County regarding collective bargaining agreements, and advancing legislative proposals in the California Legislature and the County Board of Supervisors that are beneficial to ADDA members and the criminal justice system.

**FIRST AMENDED COMPLAINT**

236. Defendants' Union Discrimination Policy, and defendants themselves, including Defendant Cooley, have hindered and prevented plaintiffs Ipsen, Debbaudt and Seligman from organizing and recruiting other deputy district attorneys to become members of ADDA, gathering together to represent the interests of ADDA and of its members, participate in collective bargaining sessions and otherwise conduct the business, further the interests and promote the activities of ADDA and its members.

237. Defendants' Union Discrimination Policy and Defendants themselves including Defendant Cooley have also defamed and disparaged plaintiffs Ipsen, Debbaudt and Seligman, in their efforts to further their Union Discrimination Policy and to interfere with these plaintiffs' constitutional rights to associate, by calling ADDA president Ipsen a "crook," a "whore," subjecting Ipsen, Debbaudt and Seligman to punitive transfers, transfers designed to interfere with the collective bargaining process and other union functions and duties, constituting "freeway therapy," lowered evaluations and other adverse employment actions, in order to publicly "make an example" of these plaintiffs in order to dissuade and discourage other DDA's from becoming members of ADDA and associating with these plaintiffs.

238. Accordingly, Defendants' Union Discrimination Policy, and the actions of defendants including Defendant Cooley violate the right of free association of plaintiffs Ipsen, Debbaudt and Seligman guaranteed by the First Amendment to the United States Constitution, made applicable to state and local governments through the Due Process Clause of the Fourteenth Amendment and actionable pursuant to 42 U.S.C. §1983.

239. As a legal and proximate result of the above-described conduct of said defendants, plaintiffs have sustained and will continue to sustain severe physical,

65

**FIRST AMENDED COMPLAINT**

1  mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness,

2  grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation and

3  indignity, as well as other unpleasant physical, mental, and emotional reactions,

4  damages to reputation, and other non-economic damages;

5

6      240.   As a further legal and proximate result of the above-described conduct of

7  said defendant, plaintiffs were required, and/or in the future may be required, to

8  engage the services of health care providers, and incurred expenses for medicines,

9  health care appliances, modalities, and/or other related expenses in a sum to be

10  ascertained according to proof.

11

12      241.   As a further legal and proximate result of the above-described conduct of

13  said defendants, plaintiff were and will be hindered, prevented, and/or precluded from

14  performing plaintiffs' usual activities, work, education, and occupations, causing the

15  plaintiffs to sustain damages for loss of income, wages, benefits, earnings, and earning

16  capacity, and other economic damages, in an amount to be ascertained according to

17  proof.

18

19      242.   As a further legal and proximate result of the above-described conduct of

20  said defendants, plaintiffs suffered incidental, consequential, and/or special damages,

21  in an amount according to proof.

22

23      243.   As a further legal and proximate result of the above-described conduct of

24  said defendants, plaintiffs have and will sustain attorneys' fees and costs in an amount

25  according to proof.

26

27      244.   Plaintiffs further request pre-judgment interest as available by law.

28

66

**FIRST AMENDED COMPLAINT**

245.   The aforesaid acts directed towards plaintiffs were carried out with a conscious disregard of plaintiffs' rights and with the intent to vex, injure, and annoy plaintiffs, such as to constitute oppression, fraud or malice, entitling plaintiff to exemplary and/or punitive damages in a sum which is an amount appropriate to punish and set an example of the individual defendants, and each of them, to deter such conduct in the future, and to set an example for others.

## FOURTH CAUSE OF ACTION

### (Violation of U.S. Constitution, Amendment I – Freedom of Speech)
### (On Behalf Plaintiffs Ipsen, Debbaudt and Seligman Against All Defendants)

246.   Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 6, 8 through 207, 211 through 240 herein as though set forth fully herein.

247.   At all times pertinent hereto, it was clearly established federal law that Plaintiffs Ipsen, Debbaudt and Seligman had a right to freedom of speech guaranteed by the First Amendment to the Constitution of the United States.  This right encompasses the right of all workers, both in public and private sectors, to discuss, make statements regarding, and express opinions regarding matters of public policy, including "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government."

248.   At all times pertinent hereto, it was clearly established federal law that

67

**FIRST AMENDED COMPLAINT**

1    256.   As a further legal and proximate result of the above-described conduct of

2    said defendants, plaintiff were and will be hindered, prevented, and/or precluded from

3    performing plaintiffs' usual activities, work, education, and occupations, causing the

4    plaintiffs to sustain damages for loss of income, wages, benefits, earnings, and earning

5    capacity, and other economic damages, in an amount to be ascertained according to

6    proof.

7

8    257.   As a further legal and proximate result of the above-described conduct of

9    said defendants, plaintiffs suffered incidental, consequential, and/or special damages,

10   in an amount according to proof.

11

12   258.   As a further legal and proximate result of the above-described conduct of

13   said defendants, plaintiffs have and will sustain attorneys' fees and costs in an amount

14   according to proof.

15

16   259.   Plaintiffs further request pre-judgment interest as available by law.

17

18   260.   The aforesaid acts directed towards plaintiffs were carried out with a

19   conscious disregard of plaintiffs' rights and with the intent to vex, injure, and annoy

20   plaintiffs, such as to constitute oppression, fraud or malice, entitling plaintiff to

21   exemplary and/or punitive damages in a sum which is an amount appropriate to

22   punish and set an example of the individual defendants, and each of them, to deter

23   such conduct in the future, and to set an example for others.

24

25   261.   As a further legal and proximate result of the actions of defendants, and

26   each of them, plaintiffs Ipsen, Debbaudt and Seligman have sustained economic

27   damages consisting of loss of past and future earnings, past and future earning

28

**FIRST AMENDED COMPLAINT**

1   capacity, promotions, promotional opportunities, benefits, and other career

2   advancement opportunities, in such nature and sums as shall be determined.

3

4   **FIFTH CAUSE OF ACTION**

5   **(Violation of U.S. Constitution, Amendment XIV – Equal Protection)**

6   **(On Behalf of All Plaintiffs Against All Defendants)**

7

8   262.   Plaintiffs hereby incorporate by reference all of the foregoing allegations

9   as if set forth fully herein.

10

11   263.   The Equal Protection Clause of the Fourteenth Amendment requires the

12   government to treat similarly-situated persons equally.

13

14   264.   Defendants' enforcement of their Union Discrimination Policy, and the

15   actions of defendants, including Defendant Cooley which violate defendants Ipsen,

16   Debbaudt and Seligman's First amendment Rights of Freedom of Association and

17   Freedom of Speech, discriminates against these defendants, and ADDA members

18   while allowing similarly-situated County employees to enjoy their constitutional

19   rights without interference.

20

21   265.   By treating Ipsen, Debbaudt, Seligman and ADDA members in a

22   discriminatory manner, Defendants have violated these Plaintiffs' fundamental

23   constitutional rights.

24

25   266.   Defendants have no rational justification for their discrimination or

26   actions which violate First Amendment Rights of plaintiffs Ipsen, Debbaudt, Seligman

27   and ADDA and its members.

28

71

**FIRST AMENDED COMPLAINT**

267.    Therefore, Defendants' Union Discrimination Policy and the actions of defendants, including Defendant Cooley in violation of Plaintiffs First Amendment Rights of Freedom of Association and Freedom of Speech, violate the Equal Protection Clause of the Fourteenth Amendment.

268.    As a legal and proximate result of the actions of defendants, and each of them plaintiffs have sustained general damages in such nature and sum as shall be determined.

269.    As a further legal and proximate result of the actions of defendants, and each of them, plaintiffs Ipsen, Debbaudt and Seligman have sustained economic damages consisting of loss of past and future earnings, income, past and future earning capacity, promotions, promotional opportunities, and other career advancement opportunities, benefits, and other losses in such nature and sums as shall be determined.

## SIXTH CAUSE OF ACTION

**(Violation of U.S. Constitution, Amendment I and XIV – *Monell Claims***
**(On Behalf of All Plaintiffs Against Defendants Steven Cooley, in his official capacity as the District Attorney of Los Angeles County and County of Los Angeles)**

270.    Plaintiffs hereby incorporate by reference all of the foregoing allegations as if set forth fully herein.

72

**FIRST AMENDED COMPLAINT**

271.   The acts of the individually named Defendants, as stated herein, occurred under color of law and constituted deprivations the Plaintiffs' rights secured by the First and Fourteenth Amendments to the United States Constitution.

272.   The acts of the individually named Defendants herein were undertaken pursuant to policies established and instituted by Defendant Cooley acting in his official capacity as the District Attorney of Los Angeles County and the County of Los Angeles.  Specifically, Defendant Cooley instituted as a policy of the District Attorney of Los Angeles County the "Union Discrimination Policy" whereby employees were intimidated from joining Plaintiff ADDA, and whereby members of Plaintiff ADDA, including Plaintiffs Ipsen, Debbaudt, Seligman and other union members were illegally discriminated and retaliated against in matters pertaining to promotions, transfers, and discipline for engaging in union activity, or for engaging in protected speech.

273.   This "Union Discrimination Policy" policy amounted to a deliberate indifference to the constitutional rights of the Plaintiffs as stated herein.

274.   This "Union Discrimination Policy" was a cause or moving force behind the underlying constitutional violation.

275.   The Plaintiffs sustained injuries, damages and losses as a result of the application of this unconstitutional policy as stated herein.

73

**FIRST AMENDED COMPLAINT**

## SEVENTH CAUSE OF ACTION

### (Violation of U.S. Constitution, Amendments IV and XIV)

### (On Behalf of All Members of the Class Consisting of Deputy District Attorneys in Grades I through IV)

276.   Plaintiffs hereby incorporate by reference all of the foregoing allegations as if set forth fully herein.

277.   The Fourth Amendment to the United States Constitution, as incorporated by the Due Process Clause of the Fourteenth Amendment, requires the government to refrain from searches when the target of a search has a reasonable expectation of privacy in the information sought.

278.   The Class of Los Angeles County Deputy District Attorneys in Grades I through IV who signed union cards between December 2007 and February 2008 had a reasonable expectation of privacy under clearly established federal law that applied to the act of returning union cards.

279.   Defendants violated the rights of the Class members by disclosing their identities to management officials, including Defendant Steve Cooley, which has resulted in Defendants using that information to threaten adverse employment actions against Class members as well as Defendants slandering Class members and intimidating them from exercising their constitutional right to unionize.

280.   The members of the Class have sustained injuries, damages and losses as a result of Defendants' illegal search of documents identifying them as supporters of the union.

74

**FIRST AMENDED COMPLAINT**

# EIGHTH CAUSE OF ACTION

## (Violation of U.S. Constitution, Amendment XIV)

## (On Behalf of All Members of the Class Consisting of Deputy District Attorneys in Grades I through IV)

281.   Plaintiffs hereby incorporate by reference all of the foregoing allegations as if set forth fully herein.

282.   The Due Process Clause of the Fourteenth Amendment protects the interests of individuals in avoiding disclosure of personal matters.

283.   The Class of Los Angeles County Deputy District Attorneys in Grades I through IV who signed union cards between December 2007 and February 2008 had a privacy interest protected by clearly established federal law regarding their act of returning union cards.

284.   Defendants violated the rights of the Class members by disclosing their identities to management officials, including Defendant Steve Cooley, which has resulted in Defendants using that information to threaten adverse employment actions against Class members as well as Defendants slandering Class members and intimidating them from exercising their constitutional right to unionize.

285.   The members of the Class have sustained injuries, damages and losses as a result of Defendants' illegal disclosure of them as union supporters.

75

**FIRST AMENDED COMPLAINT**

## NINTH CAUSE OF ACTION

### (Violation of U.S. Constitution, Amendment I)

### (On Behalf of All Members of the Class Consisting of Deputy District Attorneys in Grades I through IV)

286.   Plaintiffs hereby incorporate by reference all of the foregoing allegations as if set forth fully herein.

287.   At all times pertinent hereto, it was clearly established federal law that the Class of Los Angeles County Deputy District Attorneys in Grades I through IV who signed union cards between December 2007 and February 2008 had a right to freedom of association guaranteed by the First Amendment to the Constitution of the United States.  This right encompasses the right of all workers, both in public and private sectors, to form, and participate in, labor unions.

288.   At all times pertinent hereto, it was clearly established federal law that these plaintiffs had a right to be free from actions taken by a governmental employer that chill the exercise of First Amendment Freedoms.

289.   At all times pertinent hereto, it was clearly established federal law that the First Amendment right to freedom of association is violated by the disclosure to management of one's association with, or support for, a union, threats of retaliation against persons desiring to exercise that right, and actual retaliation occurring after the fact.

290.   At all times pertinent hereto, each Defendant knew, or should have known, of the aforementioned constitutional rights clearly established under federal law.

**FIRST AMENDED COMPLAINT**

1

2      291.   Defendants violated the rights of the Class members by disclosing their

3    identities to management officials, including Defendant Steve Cooley, which has

4    resulted in Defendants using that information to threaten adverse employment actions

5    against Class members as well as Defendants slandering Class members and

6    intimidating them from exercising their constitutional right to unionize.

7

8      292.   The members of the Class have sustained injuries, damages and losses as

9    a result of Defendants' violation of their First Amendment Right to Freedom of

10   Association.

11

12

13     **WHEREFORE**, Plaintiffs pray for judgment against the Defendants and that

14   the Court:

15

16     A.   Adjudge, decree and declare the rights and other legal relations of the

17   parties to the subject matter and claims in controversy in order that such declarations

18   shall have the force and effect of a final judgment and that the Court retain jurisdiction

19   of this matter for the purpose of enforcing the Court's Orders;

20

21     B.   Pursuant to 28 U.S.C. §2201, declare that the Defendants' policies and

22   practices, as alleged above, violate the First and Fourteenth Amendments to the

23   United States Constitution;

24

25     C.   Pursuant to 28 U.S.C. §2202, F.R.C.P. Rule 65, and 42 U.S.C. § 1983,

26   preliminarily and permanently enjoin the Defendants from enforcing their

27   unconstitutional policies and practices against Plaintiffs and others similarly situated;

28

77

**FIRST AMENDED COMPLAINT**

1

2    D.  Award Plaintiff ADDA and the Class of Los Angeles County Deputy District

3  Attorneys in Grades I through IV who signed union cards between December 2007

4  and February 2008 compensatory and punitive damages for the injuries suffered in

5  violation of federal law in an amount to be determined by a jury;

6

7    E.  Award plaintiffs Ipsen, Debbaudt, and Seligman exemplary and/or punitive

8  damages against each of the individual defendants in an amount sufficient to punish

9  and set an example of such individual defendants, to deter such conduct in the future,

10  and to set an example for others, in an amount to be determined by a jury;

11

12    F.  Award plaintiffs Ipsen, Debbaudt, and Seligman general damages in such

13  sums and nature as shall be determined by a jury;

14

15    G.  Award plaintiffs Ipsen, Debbaudt, and Seligman damages in such sums and

16  nature as shall be determined by a jury for physical, mental, and emotional injuries,

17  pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame,

18  mortification, injured feelings, shock, humiliation and indignity, as well as other

19  unpleasant physical, mental, and emotional reactions, damages to reputation, and other

20  non-economic damages, in such sums and nature as shall be determined by a jury;

21

22    H.  Award plaintiffs Ipsen, Debbaudt, and Seligman damages in such sums and

23  nature as shall be determined by a jury for health care, services, supplies, medicines,

24  health care appliances, modalities, and other related expenses in  such sums and nature

25  as shall be determined by a jury;

26

27

28

78

**FIRST AMENDED COMPLAINT**

1    I.    Award plaintiffs Ipsen, Debbaudt, and Seligman damages in such sums

2    and nature as shall be determined by a jury for loss of wages, income, earnings,

3    earning capacity, support, services, benefits, and other past and future economic

4    damages in such sums and nature as shall be determined by a jury;

5

6    J.    Award plaintiffs Ipsen, Debbaudt, and Seligman damages for other

7    actual, consequential, and/or incidental damages in such sums and nature as shall be

8    determined by a jury;

9

10    K.   Pursuant to 42 U.S.C. §1988, and other applicable law, award the Plaintiffs

11    their costs and expenses incurred in bringing this action, including reasonable

12    attorneys' fees;

13

14    L.    Award plaintiffs pre-judgment interest as available by law.

15

16    M.   Grant such other and further relief as the Court deems equitable and

17    proper.

18

19    \\\

20

21    \\\

22

23    \\\

24

25    \\\

26

27    \\\

28

79

**FIRST AMENDED COMPLAINT**

# REQUEST FOR JURY TRIAL

Plaintiffs request a jury trial for all issues so triable.

DATED:    April 5, 2010

Respectfully submitted,

MATTHEW G. MONFORTON,
(SBN 175518)
MONFORTON LAW OFFICES, PLLC

By: _____
MATTHEW G. MONFORTON
Attorney for Plaintiffs Association
of Deputy District Attorneys and
Unnamed Deputy District Attorney

GREGORY W. SMITH (SBN 134385)
MARLA A. BROWN (SBN 140158)
LAW OFFICES OF GREGORY W.
SMITH

By: _____
MARLA A. BROWN
Attorneys for Plaintiffs Steven
J. Ipsen, Marc Debbaudt and Hyatt
Seligman

80

**FIRST AMENDED COMPLAINT**