1   Elwood Lui (State Bar No. 45538)
    Brian M. Hoffstadt (State Bar No. 187003)
2   Brian D. Hershman (State Bar No. 168175)
    John S. Sasaki (State Bar No. 202161)
3   JONES DAY
    555 South Flower Street
4   Fiftieth Floor
    Los Angeles, CA  90071-2300
5   Telephone:  (213) 489-3939
    Facsimile:  (213) 243-2539
6   bhoffstadt@jonesday.com

7   Attorneys for Defendants
    COUNTY OF LOS ANGELES, STEVE
8   COOLEY, CURTIS HAZELL, JOHN SPILLANE,
    JOHN ZAJEC, and JACQUELYN LACEY
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  ONE UNNAMED DEPUTY DISTRICT          Case No. CV 09-7931 ODW (SSx)
    ATTORNEY; ASSOCIATION OF
14  DEPUTY DISTRICT ATTORNEYS, a         NOTICE OF MOTION AND
    Los Angeles County Employee          MOTION TO DISMISS BY
15  Organization, STEVEN J. IPSEN, an    DEFENDANTS COUNTY OF LOS
    individual, MARC DEBBAUDT, an        ANGELES, STEVE COOLEY,
16  individual, and HYATT SELIGMAN, an   CURTIS HAZELL, JOHN
    individual,                          SPILLANE, JOHN ZAJEC, AND
17                                       JACQUELYN LACEY TO THE
                 Plaintiffs,             SEVENTH, EIGHTH, AND
18                                       NINTH CAUSES OF ACTION IN
         v.                              PLAINTIFFS' FIRST AMENDED
19                                       COMPLAINT
    COUNTY OF LOS ANGELES; STEVE
20  COOLEY, individually and in his      [PROPOSED] ORDER (FILED
    official capacity; CURTIS HAZELL,    UNDER SEPARATE COVER)
21  individually and in his official capacity;
    JOHN SPILLANE, individually and in   Date:    July 19, 2010
22  his official capacity; JOHN ZAJEC,   Time:    1:30 P.M.
    individually and in his official capacity;  Place:   Courtroom 11
23  JACQUELYN LACEY, individually and            312 N. Spring St.
    in her official capacity; PETER A.           Los Angeles, CA
24  BURKE, individually and in her official
    capacity; JANET MOORE, individually
25  and in her official capacity; MARIO
    TRUJILLO, individually and in her
26  official capacity; LANCE WONG,
    individually and in her official capacity;
27  and DOES 1-10,

28              Defendants.

LAI-3095767v7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................................... 2

II.   STATEMENT OF FACTS ........................................................................... 3

III.  LEGAL STANDARD ................................................................................... 5

IV.   ARGUMENT ................................................................................................ 5

      A.    The Last Three Causes of Action in the First Amended
            Complaint Do Not State Violations of the Fourth, Fourteenth or
            First Amendments Under Clearly Established Law ........................... 5

            1.    Each of the Three Class-Focused Claims Must Be
                  Dismissed For Failing to State A Claim Under Existing
                  Law ........................................................................................ 6

            2.    Those Causes of Action Also Effectively Seek To Hold
                  The Administration Defendants Strictly Liable for Receipt
                  and Possession Of the Union Voting Card List, And Such
                  Strict Liability Is Not Permitted Under Section 1983 ........... 15

      B.    At a Minimum, The Administration Defendants Are Entitled To
            Qualified Immunity .......................................................................... 17

      C.    The County Should Also Be Dismissed As a Defendant From
            These Causes of Action..................................................................... 18

V.    CONCLUSION .......................................................................................... 18

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page**

**CASES**

4

*Abood v. Detroit Bd. of Educ.,*
    431 U.S. 209 (1977) ............................................................................................ 14

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970) ............................................................................................ 16

*Arakawa v. Sakata,*
    133 F. Supp. 2d 1223 (D. Hawaii 2001) ........................................................... 10

*Arpin v. Santa Clara Valley Transp. Agency,*
    261 F.3d 912 (9th Cir. 2001) ............................................................................... 8

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ......................................................................................... 5

*Berkley v. Common Council of City of Charleston,*
    63 F.3d 295 (4th Cir. 1998) ............................................................................... 16

*Brock v. Local 375,*
    860 F.2d 346 (9th Cir. 1988) ............................................................................. 14

*Brown v. Grabowski,*
    922 F.2d 1097 (3d Cir. 1990) ............................................................................ 17

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio),*
    459 U.S. 87 (1982) ...................................................................................... 13, 15

*Burdeau v. McDowell,*
    256 U.S. 465 (1921) ............................................................................................. 7

*Caviness v. Horizon Comty. Learning Ctr., Inc.,*
    590 F.3d 806 (9th Cir. 2010) ............................................................................... 5

*Church of Scientology v. United States Dept. of Army,*
    611 F.2d 738 (9th Cir. 1979) ............................................................................. 11

*Comm. on Masonic Homes v. NLRB,*
    556 F.2d 214 (3rd Cir. 1977) ............................................................................ 11

*Cook v. Gwinnett County Schl. Dist.,*
    414 F.3d 1313 (11th Cir. 2005) ........................................................................ 14

*Coto Settlement v. Eisenberg,*
    593 F.3d 1031 (9th Cir. 2010) ............................................................................. 5

ii

*Crayton v. Quarterman*,
   No. 2:08-cv-0068,__ F. Supp. 2d __, 2009 WL 3740650 (N.D. Tex. Nov. 6, 2009) ............. 16

*Damiano v. Matish*,
   830 F.2d 1363 (6th Cir. 1987)................................................................................. 14

*Davis v. Bucher*,
   853 F.2d 718 (9th Cir. 1988)................................................................................... 12

*Dible v. City of Chandler*,
   515 F.3d 918 (9th Cir. 2008)................................................................................... 11

*Doe v. Attorney Gen. of the United States*,
   941 F.2d 780 (9th Cir. 1991)............................................................................. 10, 11

*Fitzpatrick v. City of Frankfurt*,
   305 Fed. Appx. 258 (6th Cir. 2008)........................................................................ 14

*Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev.
   Agency*,
   77 F.3d 26 (2d Cir. 1996)....................................................................................... 16

*Harris v. Greer*,
   750 F.2d 617 (7th Cir. 1984)................................................................................... 16

*Haynie v. County of Los Angeles*,
   339 F.3d 1071 (9th Cir. 2003)................................................................................. 17

*Heggs v. Grant*,
   73 F.3d 317 (11th Cir. 1996)................................................................................... 17

*Hope v. Pelzer*,
   536 U.S. 730 (2002)................................................................................................ 17

*In re Crawford*,
   194 F.3d 954 (9th Cir. 1999)................................................................................... 11

*In re Grand Jury Proceeding*,
   633 F.2d 754 (9th Cir. 1980)................................................................................... 14

*In re Grand Jury Proceeding*,
   842 F.2d 1229 (11th Cir. 1988)............................................................................... 14

*Lane v. Pena*,
   518 U.S. 187 (1996)................................................................................................ 10

*Langoria v. Texas*,
   473 F.3d 586 (5th Cir. 2006)................................................................................... 17

*Levin v. Board of Educ.*,
   470 F. Supp. 2d 835 (N.D. Ill. 2007) ................................................................. 12

*Ligman v. Cal. Teachers Ass'n*,
   395 F. Supp. 2d 922 (N.D. Cal. 2005) ............................................................... 14

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ........................................................................................... 17

*Monell v. New York City Dept. of Social Servs.*,
   436 U.S. 658 (1978) ........................................................................................... 18

*Morley v. Walker*,
   175 F.3d 756 (9th Cir. 1999) ............................................................................. 18

*NAACP v. Alabama ex rel. Patterson*,
   357 U.S. 449 (1958) ..................................................................................... 13, 15

*Nelson v. NASA*,
   530 F.3d 865 (9th Cir. 2008) ................................................................... 10, 11, 12

*Nelson v. NASA*,
   568 F.3d 1028 (9th Cir. 2009) ........................................................................... 11

*Newdow v. Lefevre*,
   598 F.3d 638 (9th Cir. 2010) ............................................................................... 5

*Nixon v. Adm'r of Gen. Servs.*,
   433 U.S. 425 (1977) ..................................................................................... 10, 12, 15

*Norman-Bloodsaw v. Lawrence Berkeley Labs.*,
   135 F.3d 1260 (9th Cir. 1998) ........................................................................... 11

*Ortega v. O'Connor*,
   146 F.3d 1149 (9th Cir. 1998) ........................................................................... 17

*Owen v. City of Indep.*,
   445 U.S. 622 (1980) ........................................................................................... 16

*Pacific Molasses Co. v. NLRB*,
   577 F.2d 1172 (5th Cir. 1978) ........................................................................... 11

*Pearson v. Callahan*,
   129 S. Ct. 808 (2009) ......................................................................................... 17

*Robert v. United States Jaycees*,
   468 U.S. 609 (1984) ........................................................................................... 14

*Rodriguez v. City of Passaic*,
   730 F. Supp. 1314 (D. N.J. 1990) ..................................................................... 17

*Roe v. Sherry,*
    91 F.3d 1270 (9th Cir. 1996)..................................................................... 11, 12

*Saucier v. Katz,*
    533 U.S. 194 (2001) ................................................................................ 17

*Skinner v. Railway Labor Execs' Ass'n,*
    489 U.S. 602 (1989) ................................................................................. 7

*Smith v. Maryland,*
    442 U.S. 735 (1979) ................................................................................. 7

*Stone v. Powell,*
    428 U.S. 465 (1976) ................................................................................. 8

*Thorne v. City of El Segundo,*
    726 F.2d 459 (9th Cir. 1983)..................................................................... 11

*Trustees of Screen Actors Guild Producers v. NYCA, Inc.,*
    572 F.3d 771 (9th Cir. 2009)...................................................................... 5

*United States v. Attson,*
    900 F.2d 1427 (9th Cir. 1990).................................................................. 7, 8

*United States v. Cleaveland,*
    38 F.3d 1092 (9th Cir. 1994)...................................................................... 8

*United States v. Jacobsen,*
    466 U.S. 109 (1984) ................................................................................. 7

*United States v. Jarrett,*
    338 F.3d 339 (4th Cir. 2003)...................................................................... 7

*United States v. Miller,*
    425 U.S. 434 (1976) ................................................................................. 7

*Vegas-Rodriguez v. Puerto Rico Tel. Co.,*
    110 F.3d 174 (1st Cir. 1997)..................................................................... 12

*Washington v. Lambert,*
    98 F.3d 1181 (9th Cir. 1999)...................................................................... 7

*Whalen v. Roe,*
    429 U.S. 589 (1977) ............................................................... 10, 11, 12, 15

*Wolf v. Colorado,*
    338 U.S. 25 (1949) ................................................................................... 7

*Younger v. Harris,*
    401 U.S. 37 (1971) ................................................................................. 15

**STATUTES**

5 U.S.C. § 552(b)(6)..................................................................................................... 11

42 U.S.C. § 1983 ..................................................................................................... passim

**RULES**

Fed. R. Civ. P. 12(b)(6)............................................................................................ 1, 5

Local Rule 7-3......................................................................................................... 1

**OTHER AUTHORITIES**

U.S. Const., Amend. IV .......................................................................................... 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 19, 2010 or as soon thereafter as the matter may be heard, in Courtroom 11, 312 North Spring Street, Los Angeles, California 90012, Defendants County of Los Angeles, Steve Cooley, Curtiz Hazell, John Spillane, John Zajec, and Jacquelyn Lacey[1] will and do hereby move, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Seventh, Eighth, and Ninth Causes of Action in the First Amended Complaint ("FAC") of Plaintiffs Association of Deputy District Attorneys ("ADDA"), Steven Ipsen, Marc Debbaudt, and Hyatt Seligman and their proposed class of 650 Deputy District Attorneys (collectively, "Plaintiffs").

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the records and files in this action, together with additional matters of which the Court may properly take judicial notice, or that may otherwise be presented to the Court before or at the hearing on this matter.  This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on May 21, 2010.

---

[1] County employees Peter Burke, Janet Moore, Mario Trujillo, and Lance Wong are also named as defendants in the FAC but have not been served. Defendants Moore, Trujillo, and Wong will be responding to the FAC at a later date.

1

1

## I.    **INTRODUCTION**

Defendants Steve Cooley, Curtiz Hazell, John Spillane, John Zajec, and Jacquelyn Lacey (collectively, "the Administration Defendants") and Defendant County of Los Angeles seek dismissal of 7th, 8th and 9th Causes of Action in the First Amended Complaint.  These claims allege that, among others defendants, the Administration Defendants violated the Fourth Amendment, the Fourteenth Amendment's due process privacy guarantee, and the First Amendment's Freedom of Association Clause as to a proposed class of 650 Deputy District Attorneys, but upon closer inspection premise this constitutional liability solely on the Administration Defendants' unanticipated and unrequested receipt and subsequent possession of a list of County employees who voted in favor of unionizing Plaintiff ADDA in 2007 and 2008.[2]

These three Causes of Action must be dismissed for three reasons:

- These causes of action do not state a claim under current law:  Passive receipt of information inadvertently obtained by another is not a "search" under the Fourth Amendment; passive possession of a list of pro-unionization voters that was not compelled from anyone and not distributed by the Administration Defendants is not a violation of the right to "informational privacy" under the Fourteenth Amendment, especially because the list itself does not contain sufficiently intimate information; and passive possession of the list obtained through means other than compulsion from ADDA or its members is not a violation of the associational rights of the 650 persons who voted for unionization, over half of whom never joined ADDA.

- Imposing liability for "possession-by-happenstance" alone is tantamount to imposing strict liability on these Defendants, which is invalid in a lawsuit, like this one, based on 42 U.S.C. § 1983.

---

[2] The Administration Defendants deny that they ever received this list, but accept Plaintiffs' allegations as true for purposes of this Motion.

•       The extension of current law necessary to make the law applicable to these Defendants' conduct would premise liability on new legal principles that are by definition not "clearly established," such that the Defendants must be dismissed under the doctrine of qualified immunity.

For these reasons, these three claims should be dismissed against the Administration Defendants.  The County must also be dismissed because Plaintiffs fail to allege any policy regarding these claims.

## II.    <u>STATEMENT OF FACTS</u>

On October 30, 2009, Plaintiffs ADDA and one unnamed district attorney filed this action.  The original complaint contained three causes of action for alleged violations of First Amendment rights of association and speech.  Plaintiffs requested leave to amend their complaint on April 5, 2010 to add four new defendants, more than 100 paragraphs of new allegations, and six new causes of action, including class claims on behalf of approximately 650 prosecutors, only 300 of whom are actually members of ADDA.  (*Compare* Original Complaint *with* First Amended Complaint ("FAC").)  This Court granted Plaintiff's request, and the FAC was deemed filed on April 28, 2010.  New allegations in the FAC form the basis for Plaintiffs' class claims in the Seventh, Eighth, and Ninth Causes of Action,[3] which are the only ones pertinent to this Motion.

Plaintiffs allege that, between December 2007 and February 2008, approximately 650 Los Angeles County Deputy District Attorneys (in grades I through IV) of the 1,000 eligible to vote, voted in favor of unionizing by returning union cards.  (FAC ¶¶ 10, 209(a), 209(b).)  Although they were assured that their votes would be confidential (*id.*, ¶ 46), the List of prosecutors who returned their cards ("the List") was recorded by ERCOM, the agency that oversees employee

_____

[3] The FAC includes allegations from 650 prosecutors employed by the County "in Grades I-IV from December 2007 to February 2008 who returned union cards during that time demonstrating their desire to become unionized employees." (FAC ¶ 208)

relations between the County and all of its public employees' unions.  (FAC ¶¶ 10, 43.)  In early October 2008, Plaintiffs allege that Defendant Burke inadvertently received the List from ERCOM.  (*Id.* ¶ 43)  Plaintiffs further allege that on October 16, 2008, Defendant Burke disseminated the List to six individuals, including Defendants Moore, Wong, and Trujillo.  (*Id.* ¶¶ 47, 49-50.)  Plaintiffs also allege that copies of the List were given to "top Cooley officials" (*id.* ¶ 51), implying that Defendant Burke or one of the others with the List disseminated the List to the Administration Defendants.  Plaintiffs do not allege that the Administration Defendants directed or otherwise had any knowledge of Burke's accidental acquisition or his subsequent dissemination of the List.

In the FAC, Plaintiffs seek to certify a class comprised of the 650 prosecutors who signed union cards—even though only 300 joined ADDA as members—to seek recovery for three causes of action.  (*Id.* ¶¶ 208-210, 274-292).  More specifically, the proposed class plaintiffs allege that the Administration Defendants: (i) conducted a "search" in violation of the Fourth Amendment (Cause of Action Seven); (ii)  violated the class plaintiffs' due process rights against disclosure of personal matters (Cause of Action Eight); and (iii)  violated their First Amendment associational rights (Cause of Action Nine).  Although Plaintiffs allege in each of these counts that Defendants "disclosed the List to management", and "use[d] the List" to "threaten," "slander[]" and "intimidate[]" class members (*id.* ¶¶ 279, 284, 289), Plaintiffs do not allege that the Administration Defendants (who *include* Defendant Cooley) ever distributed the List to anyone and do not allege "adverse employment actions" against any class members other than the individuals named elsewhere in the FAC.

## III.   <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is an adjudication as to whether a cognizable legal claim has been stated." *Trustees of*

1     *Screen Actors Guild Producers v. NYCA, Inc.*, 572 F.3d 771, 775 (9th Cir. 2009).

2     Thus, although a court entertaining such a motion must "accept all factual

3     allegations in the complaint as true and construe the pleadings in the light most

4     favorable to the non-moving party," *Newdow v. Lefevre*, 598 F.3d 638, 642 (9th

5     Cir. 2010), a claim will not survive a dismissal motion unless "it contains enough

6     facts to state a claim to relief that is plausible on its facts." *Coto Settlement v.*

7     *Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.

8     Ct. 1937, 1949 (2009) (internal quotations omitted).  In making this assessment,

9     "conclusory allegations of law and unwarranted inferences are insufficient,"

10     *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010),

11     and this Court need not "necessarily assume the truth of legal conclusions merely

12     because they are cast in the form of factual allegations." *Coto Settlement*, 593 F.3d

13     at 1034 (citations and internal quotations omitted).

## IV.   <u>ARGUMENT</u>

15        The Seventh, Eighth, and Ninth Causes of Action in the First Amended

16     Complaint should be dismissed because (1) none states a valid constitutional claim

17     against the Administration Defendants under clearly established law; and (2) the

18     extension of the law that would be necessary to permit them to state a claim on the

19     facts alleged in the First Amended Complaint would be novel and hence not clearly

20     established law that would overcome qualified immunity.  For these two

21     independent but interlocking reasons, these claims must be dismissed as to these

22     defendants.  The claims against the County also fail.

       **A.**     <u>**The Last Three Causes of Action in the First Amended Complaint**</u>
<u>**Do Not State Violations of the Fourth, Fourteenth or First**</u>
<u>**Amendments Under Clearly Established Law**</u>

25        Each of the counts that the Class Plaintiffs allege fails to fit within existing

26     precedent pertinent to the relevant constitutional provision and, for that reason

27     alone, must be dismissed.  There is, moreover, a common defect fatal to all three

28     causes of action—each claim seeks to impute constitutional liability to the

1   Administration Defendants for simply possessing information given to them

2   entirely by happenstances, and 42 U.S.C. § 1983 does not provide a vehicle for

3   imposing such strict liability.

### 1. Each of the Three Class-Focused Claims Must Be Dismissed For Failing to State A Claim Under Existing Law

#### a. The Fourth Amendment claim in the Seventh Cause of Action must be dismissed because the Administration Defendants never effected a "search"

In the Seventh Cause of Action, the class plaintiffs assert that their Fourth

Amendment rights have been violated because they have a "reasonable expectation

of privacy" in their "act of returning union cards" (FAC ¶ 278) and that *all*

Defendants committed an "illegal search of documents" (*id.* ¶ 280) by "disclosing

[the Class Plaintiffs'] identities to management officials, including Defendant Steve

Cooley," which has resulted in use of that information to "threaten," "slander[],"

and "intimidate[]" them "from exercising their constitutional right to unionize" (*id.*

¶ 279).  In support of this claim, however, all that Plaintiffs have factually alleged is

that (i) "ERCOM unlawfully gave to Defendant Peter Burke" the List of persons

who "had returned cards" during the December 2007 to February 2008 vote (*id.* ¶¶

7, 43); (ii) Defendant Burke distributed the List to Defendants Moore, Wong and

Trujillo (*id.* ¶¶ 47, 49); and (iii) those individuals gave the List to the

Administration Defendants (*id.* ¶¶ 51, 279).  In light of these allegations, the

Seventh Cause of Action against the Administration Defendants boils down to the

claim that these particular defendants violated the Fourth Amendment by their

passive act of receiving the union voting card List from others.  As described

below, that is not a basis for liability.

A bedrock and longstanding principle of Fourth Amendment law is that "the

Fourth Amendment does not apply to a search or seizure, even an arbitrary one,

effected by a private party on his own initiative."  *Skinner v. Railway Labor Execs'*

*Ass'n*, 489 U.S. 602, 613 (1989); *accord United States v. Jacobsen*, 466  U.S. 109,

119 (1984) ("[t]he agents viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment") (citing *Burdeau v. McDowell*, 256 U.S. 465, 475-76 (1921)).  This limitation on the Fourth Amendment flows ineluctably from the recognition that, "[a]t its core[,] the Fourth Amendment was designed to apply to the conduct *of law enforcement engaged in criminal investigations . . .*"  *United States v. Attson*, 900 F.2d 1427, 1432 (9th Cir. 1990) (emphasis added); *Washington v. Lambert*, 98 F.3d 1181, 1182 (9th Cir. 1999) ("The security of one's privacy against arbitration intrusion by the police . . . is at the core of the Fourth Amendment . . .") (citing *Wolf v. Colorado*, 338 U.S. 25, 27 (1949)).  Private conduct falls outside the ambit of the Amendment's rationale and thus outside its scope.

Given this clearly established law, Plaintiffs' Fourth Amendment claim necessarily fails for two reasons.[4]  *First*, the Administration Defendants, according to Plaintiffs' own allegations, did nothing more than receive documents from persons to whom Burke is alleged to have given the List.  There is no allegation that the Administration Defendants in any manner dictated Burke's actions in requesting documents from ERCOM—or even that they had any knowledge of them, *cf. Skinner*, 489 U.S. at 614 (private party's acts may be a "search" if he is "act[ing] as an instrument or agent of the government"), and no amount of "after-the-fact conduct" can "transform the[ir] prior relationship," *United States v. Jarrett*, 338 F.3d 339, 346 (4th Cir. 2003).  And it is of no consequence that Burke was employed as a Deputy District Attorney at the time of his request to ERCOM, as he is still considered a "private party" for purposes of Fourth Amendment analysis unless he acted "with the intent to assist the government in its investigating or

---

[4] There may be a third reason—namely, that Plaintiffs do not have a reasonable expectation of privacy in their union vote that they disclosed to a third party, ERCOM, although it is unclear whether the confidentiality assurances alleged to have accompanied the vote could legally overcome their voluntary disclosure.  *See Smith v. Maryland*, 442 U.S. 735 (1979) (no reasonable expectation of privacy in numbers dialed from home phone); *United States v. Miller*, 425 U.S. 434 (1976) (no reasonable expectation of privacy in banking transactions).

administrative purposes" and not "for an independent purpose," *Attson*, 900 F.2d at 1433; *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 924 (9th Cir. 2001); and here, and as discussed below, there is no such allegation. *See United States v. Cleaveland*, 38 F.3d 1092, 1093 (9th Cir. 1994) (person asserting Fourth Amendment claim has burden of proving government action). Because the Administration Defendants are indistinguishable in this regard from police who passively receive evidence from others, those defendants—like the police—have not themselves committed a "search" within the meaning of the Fourth Amendment; their possession (and even their alleged use) of that information is therefore not actionable. This result is reinforced by the Fourth Amendment's rationale, which is aimed at "deter[ring] unlawful police conduct," *Stone v. Powell*, 428 U.S. 465, 484 (1976), which is a rationale that has entirely no applicability when the police—like the Administration Defendants here—did nothing beyond receive a document obtained by others.

*Second,* the Fourth Amendment claims against the Administration Defendants must not only be dismissed because *these Defendants* are not responsible for any "search" that might have occurred (as explained above); these Defendants must also be dismissed because *no one*—including Defendant Burke— committed a "search" in the first place. Without a search, there can be no Fourth Amendment violation. U.S. Const., amend. IV (prohibiting "search" and "seizure"). The Ninth Circuit has made clear that a government employee is "subject to the Fourth Amendment only when he or she has formed the necessary intent to assist in the government's investigative or administrative function; in other words, when he or she has engaged in a search or seizure." *Attson*, 900 F.2d at 1433. Plaintiffs do not allege that Defendant Burke was acting with any such intent. More fundamentally, however, is the fact that all Defendant Burke is alleged to have done is receive the list that "ERCOM unlawfully gave" him (FAC ¶ 43); in other words, Defendant is not alleged to have rummaged through any

documents or entered any rooms or file cabinets when someone was not looking—he is not even alleged to have requested the documents ERCOM "unlawfully gave" him and he certainly could not have anticipated that ERCOM would inadvertently hand him documents to which he was not lawfully entitled.  In sum, Defendant Burke himself obtained the documents by happenstance due to someone else's mistake; that is simply not a "search."  Because Defendant Burke committed no "search," the Administration Defendants could not be held derivatively responsible for any Fourth Amendment violation by Burke.

> b.  The Due Process informational privacy claim in the Eighth Cause of Action must be dismissed against the Administration Defendants because simple possession of the List does not qualify as disclosure of a personal matter compelled from Plaintiffs

The class plaintiffs allege the legal conclusion that "[t]he Due Process Clause of the Fourteenth Amendment protects the interests of individuals in avoiding disclosure of personal matters" (FAC ¶ 282), and go on to allege that Defendants violated their rights "by disclosing their identities to management officials, including Defendant Cooley," which has resulted in the "use" of that information to "threaten," "slander[]", and "intimidate[]" (*id.* ¶ 284).  The Administration Defendants (who include Defendant Cooley) are not alleged to have disclosed the List—only Defendants Burke, Wong, Moore and Trujillo are so alleged.  (*Id.* ¶¶ 49, 51.)  Moreover, Plaintiffs allege no facts indicating that the Administration Defendants actually "used" the information in the List to threaten, slander or intimidate anyone, much less that they did so in a manner affecting the class as a whole.[5]  Thus, like the Fourth Amendment claim, this claim also boils down to the

---

[5] Although the FAC does allege that a handful of individuals who were associated with ADDA and presumably members of the proposed class were the subject of retaliation or other forms of adverse actions, each of these individuals identified himself as associated with the Union wholly independent of the List. (FAC ¶¶ 12-14 (Plaintiffs Ipsen, Debbaudt, Seligman "active in ADDA's officers prior to its certification"), 28 (Rob Dver told Defendant Lacey he "wanted to join ADDA's contract negotiating team"), 79 (Plaintiff Ipsen President of ADDA since 2002), 131 (Plaintiff Debbaudt Vice-President of ADDA), 179 (Plaintiff Seligman testified in favor of ADDA's certification), 185 (Plaintiff Seligman participate in

Administration Defendants' receipt and possession of the List.

Although the concept of due process has at times been characterized as encompassing "the individual interest in avoiding disclosure of personal matters," *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Nixon v. Adm'r. of Gen. Servs.,* 433 U.S. 425, 457 (1977); *Doe v. Attorney Gen. of the United States*, 941 F.2d 780, 795 (9th Cir. 1991), *overruled on other grounds*, *Lane v. Pena*, 518 U.S. 187 (1996), cases defining this right to privacy on this basis have uniformly involved the situation in which (i) the government has compelled the disclosure of information; (ii) information is of an "extremely private" and "highly personal nature"; and (iii) the government has thereafter widely disclosed that information. *Nixon*, 433 U.S. at 459; *Arakawa v. Sakata*, 133 F. Supp. 2d 1223, 1228 (D. Hawaii 2001). None of these requirements has been met (or even alleged) here, and Plaintiffs have accordingly failed to state a claim under the Fourteenth Amendment's privacy jurisprudence.

To start, the due process right to privacy applies only when "the nature of the information sought . . . is sufficiently personal to merit protection." *Nelson v. NASA*, 530 F.3d 865, 880 n.5 (9th Cir. 2008). The key consideration is how "sensitive" the information is, *Doe*, 941 F.2d at 796, by asking whether its disclosure "lead[s] directly to injury, embarrassment or stigma," *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999). The courts have accordingly defined the universe of information qualifying for due process protection quite narrowly—to reach only (i) information dealing with "extremely sensitive" and "intensely

_____

(continued…)

ADDA's contract negotiating team), 197 (James Bozajian participated in supported ADDA over past 8 years). Thus, the alleged threats, slander and intimidation by the Administration Defendants against them are therefore not casually linked to any knowledge the Administration Defendants obtained from the List. Adverse actions alleged to have occurred to those particular individuals are accordingly irrelevant to the broader class claim tying threats, slander and intimidation to Defendants' possession of the list.

private" medical conditions and treatment for them, *Whalen*, 429 U.S. at 603-04

(use of prescription drugs); *Nelson v. NASA*, 568 F.3d 1028, 1031 (9th Cir. 2009)

(opinion on denial of rehearing) (drug treatment); *Doe*, 941 F.2d at 795-96 (AIDS

diagnosis); *Roe v. Sherry*, 91 F.3d 1270, 1274 (9th Cir. 1996) (HIV test results);

*Norman-Bloodsaw v. Lawrence Berkeley Labs.*, 135 F.3d 1260, 1269 (9th Cir.

1998) (syphilis / pregnancy test results); (ii) sexual activity and orientation, *Nelson*,

530 F.3d at 877; *Nelson*, 568 F.3d at 1031; *Thorne v. City of El Segundo*, 726 F.2d

459, 471 (9th Cir. 1983); or (iii) information, such as a social security number, that

if disclosed could be used to "inflict[] . . . alarming and potentially financially

ruinous" harm. *In re Crawford*, 194 F.3d at 958. The List of employees who

signed union cards nearly three years ago (particularly when over half never joined

ADDA) falls outside this small universe of information protected by due process,

for it does not deal with extremely sensitive medical or sexual facts and does not

pose any risk of ruinous financial harm.[6] The List is therefore not a "personal

matter" cognizable under pertinent law.

    The conduct of the Administration Defendants also falls outside of the ambit

of this constitutional guarantee. Every case to invoke this guarantee's protection

has involved *disclosure* of the covered information to a wide audience. *Dible v.

City of Chandler*, 515 F.3d 918, 929 (9th Cir. 2008) (no violation of right to privacy

if no disclosure); *Levin v. Board of Educ.*, 470 F. Supp. 2d 835, 841 (N.D. Ill. 2007)

("Without disclosure, there is no violation of the constitutional right to privacy.");

*Vegas-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 183 (1st Cir. 1997) (due

---

[6] Because this universe is significantly smaller than the universe of information protected as private under the Freedom of Information Act's ("FOIA") exemption for "personnel and medical files and similar files," 5 U.S.C. § 552(b)(6), *Pacific Molasses Co. v. NLRB*, 577 F.2d 1172, 1180 n.5 (5th Cir. 1978); *Church of Scientology v. United States Dept. of Army*, 611 F.2d 738, 746-47 (9th Cir. 1979), cases holding that union authorization cards are "private" enough to be exempt from disclosure under FOIA, *see Comm. on Masonic Homes v. NLRB*, 556 F.2d 214, 219-21 (3rd Cir. 1977) (deeming "private" under FOIA because disclosure is inconsistent with "policies of the [National Labor Relations Act]"); *Pacific Molasses Co.*, 577 F.2d at 1181-82 (same), are of no relevance to the constitutional claim advanced by Plaintiffs.

process privacy right "has not extended beyond prohibiting profligate disclosure of medical, financial and other intimate personal data"); *cf. Davis v. Bucher*, 853 F.2d 718, 721 n.3 (9th Cir. 1988) ("limited disclosure" of information insufficient to state a due process violation); *Roe*, 91 F.3d at 1274 (limited disclosure of HIV-testing results to prosecution team insufficient to state constitutional privacy claim). In this case, *the Administration Defendants* are not alleged to have done anything beyond receive the List; they are not alleged to have disclosed the List to anyone. This itself defeats Plaintiffs' claim against them.

Nor did these Defendants—or, for that matter, *anyone*—in the first place compel Plaintiffs to provide the information they now seek to keep private, which has also been a critical element of most privacy cases under the Due Process clause. *Whalen*, 429 U.S. 589 (prescription drug users compelled to disclose information to state); *Nixon*, 433 U.S. at 467 (President compelled to disclose all Presidential papers to National Archivist); *Nelson*, 530 F.3d at 877 (noting that government was "compel[ling] disclosure"). Here, Plaintiffs voluntarily provided the information to ERCOM, which accidentally delivered to Defendant Burke, who is alleged to have distributed it to other persons (including Defendants Moore, Trujillo and Wong), who *then* disseminated it to the Administration Defendants. The Administration Defendants are therefore two to three steps away from Plaintiff's disclosure, which was itself not compelled.

For all these reasons, Plaintiffs have failed to state a claim against the Administration Defendants under the Fourteenth Amendment's "informational privacy" guarantee.

        c.    The First Amendment associational claim in the Ninth Cause of Action must be dismissed against the Administration Defendants because they did not compel disclosure of the List and because the Class Plaintiffs do not enjoy "associational" rights

Plaintiffs' assert that union supporters—that is, those "who signed union cards between December 2007 and February 2008"—have a "right to freedom of

association" (Compl., ¶ 287) that was violated by the Defendants through their "disclosure" of the List cataloguing their three-year-old, pro-unionization stance, which is alleged to have thereby "chilled" the Plaintiffs' First Amendment associational rights (*id.*, ¶ 288). Although Plaintiffs also contend that "*it was clearly established federal law* that the right to freedom of association is violated by the disclosure to management of one's associations with, or support for, a union, threats of retaliation against persons desiring to exercise that right, and actual retaliation occurring after the fact" (*id.*, ¶ 289) (emphasis added), Plaintiffs do not allege that the Administration Defendants disclosed the List to anyone else or that they threatened or actually engaged in any acts of retaliation against the class as a whole (as opposed to acts or threats of retaliation against certain individuals) (*id.*, ¶ 291).[7] Consequently, the factual basis for this claim is the Administration Defendants' conduct in possessing the List and the attendant chilling effect allegedly stemming from that possession.

As with the other two causes of action that are before this Court in this Motion to Dismiss, Plaintiffs properly state the baseline legal principle—in this instance, that there is a freedom of association that contains a component protecting the privacy of an association's members, *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91 (1982) ("Inviolbity of privacy in group associations may in many circumstances be indispensable to preservation of freedom of association") (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). But Plaintiffs again ignore the well-established limitations on this principle. Most pertinent here are the requirements that Plaintiffs possess a cognizable associational right and that the government has compelled disclosure of that association's membership rolls. Neither requirement is present here.

A valid associational claim under the First Amendment presupposes that the

---

[7] Even if Plaintiffs had alleged actual retaliation against the non-named class members, that does not cure the defects described above with the other aspects of this claim.

plaintiffs are members of a group that qualifies as an "association" within the meaning of that Amendment. The Supreme Court has acknowledged that groups exist along a "spectrum" "that may make greater or lesser claims of constitutional protection" depending on their "relative smallness," their degree of selectivity and their "seclusion of others in critical aspects of the relationship." *Robert v. United States Jaycees*, 468 U.S. 609, 620 (1984); *see also In re Grand Jury Proceeding*, 633 F.2d 754 (9th Cir. 1980) (trust not entitled to constitutional protect based on shared beliefs); *In re Grand Jury Proceeding*, 842 F.2d 1229 (11th Cir. 1988) (advocacy group also providing financial services not entitled to constitutional protection). Courts have recognized that labor unions may possess associational protection *vis-à-vis their members*, *e.g., Brock v. Local 375*, 860 F.2d 346, 349 (9th Cir. 1988); *Fitzpatrick v. City of Frankfurt*, 305 Fed. Appx. 258, 263 (6th Cir. 2008); *Cook v. Gwinnett County Schl. Dist.*, 414 F.3d 1313, 1320 (11th Cir. 2005) ("courts have long held that freedom of association protection extends to membership in organizations such as labor unions"), but have repeatedly held that non-members often have very different interests than members. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977); *e.g., Damiano v. Matish*, 830 F.2d 1363, 1369 (6th Cir. 1987); *Ligman v. Cal. Teachers Ass'n*, 395 F. Supp. 2d 922, 927-28 (N.D. Cal. 2005).

ADDA, as a union, falls on the less protected end of the spectrum, as it has 300 members and is open to any employee within the Deputy District Attorney I-IV classifications who wants to join (FAC ¶ 10). What undermines the *Plaintiffs'* claim to constitutional protection, however, is that *Class Plaintiffs who are as a group asserting an associational right* are comprised not only of those 300 employees who are members of ADDA, but the additional 350 employees who voted in favor of unionization 2.5 years ago but elected not to join ADDA. (FAC ¶¶ 209(a), 209(b), 10.) *This* group of plaintiffs is broader than ADDA's members and, under settled precedent, lacks the cohesiveness to assert an associational right.

Moreover, the First Amendment associational right is violated only when the government compels disclosure of a protected association's membership, *see Nixon*, 433 U.S. at 467; *NAACP*, 357 U.S. at 462; *Brown*, 459 U.S. at 93, and even then only when that disclosure causes harm, *Whalen*, 429 U.S at 604 n.32, or at a minimum creates a "likelihood of a substantial restraint upon the exercise [of the association's] members['] … freedom of association." *NAACP*, 357 U.S. at 462. Absent compelled disclosure, "the existence of a chilling effect, even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger v. Harris*, 401 U.S. 37, 51 (1971). The Administration Defendants did not violate this guarantee: The List is not a list of members (because only less than half of the class ever joined ADDA), and for the reasons explained above, *see supra*, the Administration Defendants did not compel the disclosure of the Plaintiffs' support for unionization. The chilling that Plaintiffs allege stems from the mere possession is not enough to overcome the legal deficiencies in Plaintiffs' First Amendment associational claim as set forth in the Ninth Cause of Action.

> **2.** **Those Causes of Action Also Effectively Seek To Hold The Administration Defendants Strictly Liable for Receipt and Possession Of the Union Voting Card List, And Such Strict Liability Is Not Permitted Under Section 1983**

In addition to the legal deficiencies unique to the law governing each of the three causes of action at issue in this Motion, those causes of action must be dismissed for an additional reason: They in effect seek to impose liability for multiple violations of the federal Constitution on a purely strict liability basis. The factual allegations supporting each of these claims aver the same conduct by the Administration Defendants—namely, that they received by happenstance and through no action of their own, and thereafter possessed, the List of union vote cards. These defendants are not alleged to have disseminated the List, and are not alleged to have used the List in any way other than by possessing it (and, solely by

virtue of that possession, threatening, slandering and intimidating class members whose identities were ascertained from the List).  Holding the Administration Defendants liable for Fourth, Fourteenth and First Amendment violations on these allegations is deeming them strictly liable for the simple acts of receiving and possessing the List.

This is not acceptable under well-established law.  This action is fundamentally premised on 42 U.S.C. § 1983 (FAC ¶ 8), but "Section 1983 does not in general impose strict liability on all who come within its prohibitions." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 231 (1970); *Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 30 (2d Cir. 1996) (Supreme Court has rejected strict liability under § 1983); *Crayton v. Quarterman*, No. 2:08-cv-0068,__ F. Supp. 2d __, 2009 WL 3740650, *2 (N.D. Tex. Nov. 6, 2009).  The well-settled prohibition against holding superiors strictly liable under Section 1983 for the acts of their subordinates (*e.g., Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984)) reinforces this general rule:  If supervisory strict liability is inappropriate, imposing strict liability for the acts of someone completely outside a defendant's pertinent supervisory authority should also be barred.  There are, moreover, good reasons for this rule requiring a plaintiff to premise constitutional liability on more than strict liability—namely, that strict liability "serves to convert[] municipal governance into a hazardous slalom through constitutional obstacles that often are unknown and unknowable."  *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 309 (4th Cir. 1998) (quoting *Owen v. City of Indep.*, 445 U.S. 622, 665 (1980) (Powell, J., dissenting) (internal quotations omitted)).

For this reasons as well, these causes of action must be dismissed.[8]

---

[8] Because Plaintiffs have failed to establish a violation of a constitutional right under current law, there is no need for further inquiries concerning qualified immunity.  *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1078 (9th Cir. 2003).

**B.     At a Minimum, The Administration Defendants Are Entitled To Qualified Immunity**

Because, as detailed above, the facts alleged regarding the last three Causes of Action in the First Amended Complaint do not state a claim against the Administration Defendants under the Fourth, Fourteenth and First Amendments, the only way for Plaintiffs to survive a dismissal is to argue for the extension of the law—namely, that the passive receipt and possession of a list of pro-unionization voters violates these Amendments notwithstanding all of the requirements of current law that go unmet on the current allegations.  Adopting such arguments would require this Court to announce new principles of law, and "a new principle of law cannot at the same time be clearly established." *Rodriguez v. City of Passaic*, 730 F. Supp. 1314, 1326 (D. N.J. 1990); *see Ortega v. O'Connor*, 146 F.3d 1149, 1157-58 (9th Cir. 1998) (same); *Heggs v. Grant*, 73 F.3d 317, 321 (11th Cir. 1996); *Brown v. Grabowski*, 922 F.2d 1097, 1011 (3d Cir. 1990); *Langoria v. Texas*, 473 F.3d 586, 593-94 (5th Cir. 2006).

A defendant cannot be liable under Section 1983, however, unless he or she violates "clearly established law." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).  Otherwise, the defendant has qualified immunity for those actions.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Because qualified immunity is designed to obviate any need for trial where the defendant's actions do not violate clearly established law, *Pearson*, 129 S. Ct. at 815, it is to be resolved as early as possible, *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled on other grounds, Pearson*, 129 S. Ct. 815.  Qualified immunity may be found applicable at the dismissal stage where, as here, the facts set forth in the complaint and accepted as true establish that the defendant(s) are entitled to qualified immunity because the legal foundation of the Plaintiffs' claims are novel and hence not clearly established.  *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

**C.    The County Should Also Be Dismissed As a Defendant From These Causes of Action**

Plaintiffs cannot sustain their Seventh, Eighth and Ninth Causes of Action against the County either, for two reasons in particular.  First, the Supreme Court has roundly rejected the imposition of liability against the County as an entity for any alleged misconduct of its employees under a respondeat superior theory under Section 1983, *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978).  To the extent any liability against the County is premised on employee misconduct in their official capacity, these Defendants did not violate the Constitution in any event as described above.  Second, Plaintiffs have not alleged any direct liability against the County by virtue of any official County policy pertinent to these particular causes of action.  The policy alleged in Plaintiffs' Sixth Cause of Action, which pertains solely to the alleged and specifically defined "Union Discrimination Policy" (FAC ¶ 25), is neither mentioned and is not otherwise applicable to the Seventh, Eighth, and Ninth Causes of Action, which involve ERCOM's inadvertent disclosure of the List.  For these reasons, the County must also be dismissed.

**V.    CONCLUSION**

In light of the foregoing, Defendants respectfully request that this Court dismiss the Seventh, Eighth, and Ninth Causes of Action in the FAC against the Administration Defendants and the County.

Dated: May 28, 2010                       **JONES DAY**

                                          By _____/s/_____
                                             Brian D. Hershman

                                          Attorneys for Defendants
                                          COUNTY OF LOS ANGELES,
                                          DISTRICT ATTORNEY'S OFFICE,
                                          STEVE COOLEY, CURTIS HAZELL,
                                          JOHN SPILLANE, JOHN ZAJEC, and
                                          JACQUELYN LACEY